## MATTHEWS GLASS COMPANY v. BURK.

[No. 20,239. Filed March 16, 1904. Rehearing denied May 11, 1904.]

SALES.—*Contracts.*—*Construction.*—Plaintiff agreed to sell defendant its certain output of glass at prices at a certain per cent. lower than the lowest price of a certain named glass company in order to enable defendant to compete successfully with the customers of such glass company. *Held*, that it was no defense to a demand by defendant for a re-

duction of the price of the glass on account of rebates made by the company whose prices were adopted as a basis of computation that such rebates were not made in the ordinary course of trade, but for the purpose of preventing competition.  *pp. 609–611.*

CONTRACTS.—*Construction.*—*Sales.*—Defendant agreed to purchase of plaintiff all of its output of glass at a certain per cent. lower than the lowest price made by a certain named glass company, payment to be made by defendant on receipt of same, less two per cent.  *Held,* that each shipment should be treated as a separate sale and transaction, the prices to be paid to be computed on the basis of the prices before established by the company whose prices were referred to, and that defendant was not entitled to a rebate on the price of glass made by such company to its customers except upon glass delivered and accepted by him after the date of the rebate made by such company.  *pp. 611–615.*

SAME.—*Sales.*—*Evidence.*—In an action to recover a balance alleged to be due plaintiff from defendant for glass sold by the former to the latter under a contract fixing the price at a certain per cent. lower than the lowest price of a certain glass company, certain circular letters issued by such company to its customers informing them of the prices of glass were properly admitted in evidence.  *pp. 615, 616.*

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by the Matthews Glass Company against Benjamin F. Burk.  From a judgment for defendant, plaintiff appeals.  Transferred from Appellate Court, under §1337u Burns 1901.  *Reversed.*

*P. B. Manley, S. L. Stricler* and *C. L. Medsker,* for appellant.

*G. A. Henry* and *P. H. Elliott,* for appellee.

DOWLING, J.—The appellant sued the appellee for a balance of $3,500, claimed to be due on account of eight car loads of window glass sold and delivered by the appellant to the appellee under a contract in these words: "Marion, Indiana, October 26, 1899.  It is hereby understood and agreed by and between Matthews Glass Company of Matthews, Grant county, Indiana, and Benjamin F. Burk of Marion, Indiana, that the former is to sell the latter virtually all the glass they make during the blast of 1899 and 1900 at a discount which will be five per cent. lower than the lowest price made by the American Window Glass Com-

pany, all rebates included, on all sizes single strength and on all sizes double strength to sixty united inches. On all sizes double strength sixty united inches and over the price is to be seven and one-half per cent. lower as herein mentioned. On all shipments made to Marion, freight is to be allowed. If shipments are to be made other than to Marion, and as directed by said Burk, then no freight is to be allowed. The quality of all glass is to be fully up to standard brands. Should the price be lower than what would be equal to ninety per cent. from present list, then said glass company is to have the privilege of not furnishing in case they decide not to sell, and if for any reason of dissatisfaction on the part of either party this agreement may be annulled on one week's notice. Payment for glass is to be made by said Burk promptly on receipt of same, less two per cent. Matthews Glass Company, per A. Wuchner, Sec'y., Joseph Mayer, Prest. Benj. F. Burk."

The appellee filed an answer in denial, a plea of payment, and a counterclaim. The only material part of the counterclaim on this appeal is a demand for a reduction of the price of the glass on account of rebates made by the American Window Glass Company December 7, 1899, to which he alleged he was entitled by the terms of the foregoing contract. The first paragraph of answer to the counterclaim was a denial; the second an argumentative denial; and the third averred that the rebates made by the American Window Glass Company to its customers were illegal, because not made in the ordinary course of trade, but for the purpose of preventing competition; that the price fixed by the American Window Glass Company was less than the cost of manufacture, and that the said company was an unlawful combination for the purpose of creating a monopoly in the window glass business. No reply was filed. A demurrer to appellee's counterclaim was overruled, and a demurrer to the third paragraph of appellant's answer to appellee's counterclaim was sustained. The cause was tried

Matthews Glass Co. v. Burk.

by the court, and there was a finding for the appellee. A motion for a new trial was overruled, and judgment was rendered on the finding.

The rulings on the demurrer and on the motion for a new trial are assigned for error.

We find no error in the action of the court in sustaining the demurrer to the third paragraph of appellant's answer to the counterclaim. The purpose of the contract between the appellant and the appellee was not to prevent competition, but to enable the appellee to compete successfully with the customers of the American Window Glass Company. For all that appears in the pleadings, the nature of that corporation and its methods of doing business were as well known to the appellant when it entered into the contract with the appellee, as at any time afterward. The parties having seen fit to adopt the prices which might be fixed by the American Window Glass Company for the sale of its glass to its customers as the basis of the prices to be paid by the appellee to the appellant, neither of them can be heard to say that the American Window Glass Company was an illegal combination, and that its methods of dealing were unfair. They fixed the terms of the agreement with each other voluntarily and deliberately, and we can discover no reason why one of them should be released because prices went down instead of being advanced. If the prices of glass had been kept up by the American Window Glass Company, we cannot think that the appellant would have objected to the contract on the ground that the American Window Glass Company was an unlawful combination for the purpose of creating a monopoly in the business of manufacturing and selling window glass.

2. The principal controversy is over the proper construction of the contract. The appellant claims that the price to be paid for glass was five per cent. lower than the lowest price made by the American Window Glass Company, all rebates included, on all sizes single strength, and

on all sizes double strength to sixty united inches; and seven and one-half per cent. lower than the lowest price made by the American Window Glass Company, all rebates included, on all sizes double strength sixty united inches and over, less two per cent., up to the time of the delivery of each shipment to the appellee. The latter contends that the price of the glass was to be computed after the production was completed upon the basis of the whole quantity sold and delivered and that the total sum to be paid by the appellee to the appellant was to be five per cent. and seven and one-half per cent. less than the lowest prices at which the American Window Glass Company sold the same kind of glass, during the same period, all rebates included, less two per cent.

The contract was an executory one, and contemplated the sale of the entire output of the appellant for the season of 1899 and 1900. The time and the quantity of the shipments were not fixed. It may be assumed that the glass was to be delivered as fast as manufactured in sufficient quantities to justify shipment. Payment was to be made by the appellee on receipt of each shipment. At what price? The contract answers the question. At a discount of five per cent. lower than the lowest price made by the American Window Glass Company, all rebates included, on all sizes single strength, and on all sizes double strength to sixty united inches; and on all sizes double strength, sixty united inches and over, at a discount of seven and one-half per cent. on prices fixed by the American Window Glass Company, less two per cent. The contract does not provide for the payment of any rebate by the appellant to the appellee.

The purpose of the parties was to enable the appellant to undersell the American Window Glass Company. If the prices of glass fell ninety per cent. below an existing price list, the appellant had the right to end the agreement. Either party was authorized to cancel it upon one

week's notice.  All these provisions indicate that each shipment was to be treated as a separate sale and transaction, and that the price to be paid for the glass shipped was to be computed on the basis of the prices before that established by the American Window Glass Company existing at the date of the receipt of the glass.  The agreement is the same in legal effect as if it had provided that payment for each shipment should be made at the market price, say, at Chicago, on receipt of the glass.  Any other construction would leave the price undetermined until the whole of the output of the factory should be received by the appellee, and neither party would know what the price would be until the end of the season.  The provisions of the contract that the appellant might terminate it at any time when the price fell below ninety per cent. of the existing price list, and that either party might annul it on one week's notice, are inconsistent with the idea that the price to be paid for each shipment and delivery depended upon the result of the action of the American Window Glass Company in fixing prices for the whole season.

The language used in the contract concerning the payments by appellee is not without significance.  The words of this provision are, "payment for glass is to be made by said Burk promptly on receipt of same, less two per cent." It will be noticed that not even the definite article "the" is used before the word glass.  The intent of the parties appears to have been that all glass delivered should be paid for on delivery, and that such payment should close the transaction to that extent.  It is clear that the parties had the right to adopt the method agreed upon for fixing the price to be paid for glass delivered and accepted under the contract.  There was nothing illegal in it, and both were bound by its terms.  Having adopted this means, neither can be permitted to say that the method was not a fair and proper one.  *Mason v. Beard,* 2 Ind. 505; *Luthy & Co.* v. *Waterbury & Co.,* 140 Ill. 664, 30 N. E.

351; *Beymer, Bauman Lead Co. v. Haynes*, 81 Me. 27, 16 Atl. 326; *Champion Machine Co. v. Gorder*, 30 Neb. 89, 46 N. W. 253; *Talmage v. White*, 35 N. Y. Super. Ct. 218. Where goods are deliverable in periodical instalments, and are to be paid for on receipt of each instalment, the price becomes due upon each delivery, and to that extent, when payment is made, the contract is to be treated as executed on both sides.

In *Veerkamp v. Hulburd, etc., Co.*, 58 Cal. 229, 41 Am. Rep. 265, the defendant agreed to take and pay for all the fruit raised by the plaintiff at a uniform rate per pound for all fruit so raised and delivered, at the works of the defendant. The plaintiff delivered and the defendant received fruit under the contract, but the latter refused to pay for the fruit until all was delivered, and the plaintiff declined to deliver any more, and sued for the value of that delivered. It was held that as each lot was delivered and accepted the price agreed upon became due.

So, too, in a recent case in this State—*Neal v. Shewalter*, 5 Ind. App. 147—plaintiffs agreed to sell and defendants to buy 4,000 barrels, to be delivered at defendants' mill by a fixed date. It was further agreed that defendants should buy from plaintiffs all the barrels that they should use for one year from the date of the contract, at a price of thirty-three cents cash per barrel. The court construed this as an executory contract to sell, and not an absolute sale, and decided that when any number of barrels was delivered and accepted plaintiffs were entitled to payment at the contract price for the number delivered. See, also, *Skilman Hardware Co. v. Davis*, 53 N. J. L. 144; *Matthews v. Hobby*, 48 Barb. 167; *Pineville Lumber Co. v. Thompson*, 46 Minn. 502, 49 N. W. 204.

Suppose that, in the present case, the price to be paid for glass delivered had been five per cent. less than the lowest market price at Chicago, payable on receipt of glass. Certainly no one could have claimed that this meant the lowest

price at Chicago at any time during the whole period of delivery. Its obvious intent would be to fix the price upon the basis of the prices at Chicago at the date of the delivery of each instalment of the goods delivered and accepted. As all the glass, except the last two shipments, was delivered to and accepted by the appellee before December 7, 1899, the date at which the American Window Glass Company made a rebate of ninety per cent. on single strength and ten per cent. on all sizes of double strength glass, the appellee was bound to pay the price named by the contract, calculated upon the basis of the prices established and maintained by the American Window Glass Company at the date of each delivery and acceptance of glass, and he was entitled to no reduction of price on the rebate proposed and made by the American Window Glass Company to its customers December 7, 1899, except upon glass delivered and accepted after that date. The counter-claim rested upon a different construction of the contract, and the evidence was introduced upon the same theory. In our opinion, the evidence was not sufficient to sustain the finding.

No error was committed in admitting in evidence the circular letters purporting to be addressed by the American Window Glass Company to its customers. By fixing the price to be paid for glass by the appellee on the basis of prices thereafter to be established by the American Window Glass Company, the parties brought into their agreement the course of dealing of that corporation with its customers from time to time, during the period of the delivery of glass under their contract. The letters were shown to be the means by which that corporation informed its customers of its prices for glass, and they were received by the appellee, or the Marion Window Glass Works, of which he was an officer, in the regular course of business, and were recognized and acted upon by the American Window Glass Company. They stood very much upon the foot-

ing of an ordinary price current, concerning which no very formal proof is ever required. *Sloan* v. *Baird,* 162 N. Y. 327, 56 N. E. 752; *Gilbert* v. *Manning,* 54 Hun 99, 7 N. Y. Supp. 220; *Parmenter* v. *Fitzpatrick,* 135 N. Y. 190, 31 N. E. 1032.

For the error of the court in overruling the motion for a new trial when asked for on the ground that the decision of the court was not sustained by sufficient evidence, the judgment is reversed, with directions to sustain said motion, and for further proceedings in accordance with this opinion.