## VERRAN v BLACKLOCK

1. TRIAL—DIRECTED VERDICT—TRIER OF FACT—EVIDENCE.

   A verdict is properly directed only when there is no question for the trier of fact; that is, when all of the evidence is considered in the light most favorable to the party against whom the verdict is sought, all reasonable men would agree that the moving party should prevail.

2. APPEAL AND ERROR—DIRECTED VERDICT—COURTS—PROOFS—INFERENCES.

   An appellate court, on review of a directed verdict, must view the proofs and reasonable inferences therefrom in the light most favorable to the party against whom the verdict was granted.

3. EVIDENCE—PRIMA FACIE CASE—BURDEN OF PROOF—THEORY IN AVOIDANCE.

   A basic principle of procedure provides that when a party introduces competent evidence to support his position to the extent of establishing a prima facie case, and the adverse party, instead of controverting these facts, sets up another distinct theory in avoidance, the burden of proof is upon the adverse party to substantiate that defense.

4. CONTRACTS—BREACH—DAMAGES—DEFENSES.

   One who has caused the breach of an agreement cannot recover damages for the breach of the other party, nor can he set up the agreement as a defense to an action on the contract.

5. VENDOR AND PURCHASER—LAND CONTRACT—FORFEITURE—CONTRACTS—BREACH OF CONTRACT—DEFENSE.

   Defendant purchasers did not meet the burden of establishing a defense to plaintiff vendors' claim for forfeiture of a land contract for non-payment of monthly installments where the purchasers were not justified in withholding land contract

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 489 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 886.
[3, 5, 6] 61 Am Jur 2d, Pleading § 155.
[4–6] 27 Am Jur 2d, Equity § 131 *et seq.*

payments due to cessation of a water supply because the water
was turned off for the purchasers' failure to pay the charge for
electricity pursuant to an agreement incorporated by reference
in the land contract; the defendant purchasers cannot set up
their own breach as a defense to plaintiff vendors' action.

6. Vᴇɴᴅᴏʀ ᴀɴᴅ Pᴜʀᴄʜᴀꜱᴇʀ—Lᴀɴᴅ Cᴏɴᴛʀᴀᴄᴛꜱ—Cᴏɴꜱᴘɪʀᴀᴄʏ—Bʀᴇᴀᴄʜ
   ᴏꜰ Cᴏɴᴛʀᴀᴄᴛ—Wᴀᴛᴇʀ Rɪɢʜᴛꜱ.

   Land contract vendees cannot allege a conspiracy by their land
   contract vendor and adjacent landowners to deprive the vend-
   ees of water where the vendees lost their right to the water as
   a result of their own initial breach of the agreement with the
   adjacent landowners concerning those water rights.

Appeal from Washtenaw, Patrick J. Conlin, J.
Submitted Division 2 April 17, 1975, at Lansing.
(Docket No. 20645.) Decided April 28, 1975.

Complaint by Fred and Laura Verran against
Gerald and Thursie Blacklock for forfeiture of the
vendor's interest under a land contract. Cross-com-
plaint by defendants against plaintiffs and Mr. and
Mrs. Marrion Beasley, as third-party defendants,
for conspiracy between the Verrans and Beasleys
and for breach of contract. Judgment for plaintiffs
and third-party defendants. Defendants appeal.
Affirmed.

*Jack J. Garris,* for plaintiffs.

*William S. Evans,* for defendants.

*Craig, Fried & Heidt,* for third-party defendants.

Before: Dᴀɴʜᴏꜰ, P. J., and Bᴀꜱʜᴀʀᴀ and D. E.
Hᴏʟʙʀᴏᴏᴋ, Jʀ., JJ.

Pᴇʀ Cᴜʀɪᴀᴍ. Defendants appeal from a judg-
ment of forfeiture of the vendee's interest under a
land contract entered upon a directed verdict in
favor of the plaintiffs, and from a directed verdict

of no cause of action in favor of the third-party defendants. We affirm.

A verdict is properly directed only when there is no question for the trier of fact. That is, when all of the evidence is considered in the light most favorable to the party against whom the verdict is sought, all reasonable men would agree that the moving party should prevail. *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708, 712; 202 NW2d 727 (1972), *lv den,* 388 Mich 812 (1972), *Keevis v Tookey,* 42 Mich App 283, 286; 201 NW2d 661 (1972). Similarly, on review of a directed verdict by an appellate court, the proofs and reasonable inferences therefrom must be viewed in the light most favorable to the party against whom the verdict was granted. *Daniel v McNamara,* 10 Mich App 299, 304; 159 NW2d 339 (1968), *Ingram v Henry,* 373 Mich 453, 455; 129 NW2d 879 (1964). Therefore, the following recitation of facts is as favorable to the defendants as is possible. Every reasonable inference is drawn in support of their case, and all factual disputes are resolved in their favor.

Defendants-appellants are the vendees under a land contract entered into on March 1, 1969 with Kenneth R. Lash and his wife for the purchase of a house and lot located at 9837 West Six Mile Road in Washtenaw County. The contract included as an additional clause the following language:

"Subject to the terms of an agreement dated June 19, 1961; re use of well and pumping facilities".

This reference is to an "agreement" entered into on June 19, 1961 between Bruce and Ann Parmenter, identified in the writing as "purchaser on a land contract" of a certain parcel of real property known as 9825 West Six Mile Road, and William

and Norma Bell, identified as "the owner of land
* * * adjacent to the lands" of the Parmenters;
known as 9837 West Six Mile Road. Under the
terms of this agreement, the Parmenters were to
provide water from a well on their property and
the Bells were to furnish "[a]ll electricity for
pumping of water used by both parties".

At the time they entered into the land contract,
Mr. Lash told Mr. Blacklock that prior occupants
had paid $5 per month for the electricity to run
the pump. Mr. Blacklock began making payments
in that amount to Mr. and Mrs. Beasley, the
current occupants of the adjacent property at 9825
West Six Mile Road. Mr. Blacklock stopped mak-
ing these payments at some point in 1970. He
conceded at trial that he owed at least $35, repre-
senting payments for seven months, when his
water was turned off on June 2, 1971. He testified
that at that time he offered the Beasleys $20, but
they refused to accept this partial payment.

When the water was turned off, the Blacklocks
ceased making installment payments to the plain-
tiffs, assignees of the vendor's interest in the land
contract. Plaintiffs instituted an action in district
court to have the land contract declared forfeit as
a result of the Blacklocks' failure to make pay-
ments for the months of August through Novem-
ber, 1971. Defendants responded by filing a cross-
complaint and joined the Beasleys as third-party
defendants. They claimed $100,000 in damages
allegedly inflicted as a result of a conspiracy be-
tween the Verrans and Beasleys, and for breach of
contract.

The case was transferred to the circuit court for
jury trial. The trial began on May 6, 1974. The
plaintiffs put in their case, establishing the terms
of the land contract and the defendants' failure to

make the required payments. The defendants then went forward with their proofs. They made no attempt to deny their breach of the land contract, but they sought to excuse the failure to make payments by proving that the land contract had been breached when the water supply was shut off. After they rested, the trial court entertained motions outside the presence of the jury.

Plaintiffs' motion for summary disposition of the cross-complaint was granted, as was their motion for a directed verdict of forfeiture. Thereafter, the third-party defendants rested, and also moved for a directed verdict. The trial court granted this motion. From the entry of judgment on these verdicts, and a subsequent denial of their motion for a new trial, defendants appeal.

As to the forfeiture action brought by the Verrans, the Blacklocks relied upon the affirmative defense of breach of contract. They concede that they have not made payments, but they contend that they were not required to do so because the agreement referred to in the additional clause in the land contract was breached by the termination of the water supply. However, the record discloses through the testimony of the defendants themselves that the water supply was discontinued because the defendants failed to make payment for electricity to power the pump as specifically required by the terms of the agreement referred to in the land contract.

A basic principle of procedure well-settled early in this state provides that when a party introduces competent evidence to support his position to the extent of establishing a prima facie case, and the adverse party, instead of controverting these facts, sets up another distinct theory in avoidance, the burden of proof is upon him to substantiate that

defense. *Manistee National Bank v Seymour,* 64 Mich 59; 31 NW 140 (1887), *Keystone Manufacturing Co v Forsyth,* 123 Mich 626; 82 NW 521 (1900), *Waterman-Waterbury Co v School District No 2 of Wyoming Township,* 182 Mich 498; 148 NW 673 (1914), *Bay State Milling Co v Szucs,* 225 Mich 509; 196 NW 355 (1923).

Of equal venerability is the rule that one who has caused the breach of an agreement cannot recover damages for the breach of the other party, nor can he set up the agreement as a defense to an action on the contract. *Barton v Gray,* 57 Mich 622; 24 NW 638 (1885), cited in *Kiff Contractors, Inc v Beeman,* 10 Mich App 207; 159 NW2d 144 (1968).

Defendants have not met the burden of establishing a defense to the plaintiffs' claim. They were not justified in withholding land contract payments due to cessation of the water supply because the water was turned off for their failure to pay the charge for electricity. They cannot set up their own breach as a defense to the plaintiffs' action. Furthermore, they cannot allege a conspiracy to deprive them of water when they had no right to the water as a result of their initial breach of the agreement.

Thus, it is evident that the defendants have failed to establish their defense, and they certainly have not substantiated their allegation of a conspiracy between the plaintiffs and third-party defendants. All reasonable men would agree that there has been an essential failure of proof. *Snider v Bob Thibodeau Ford, Inc, supra.* Consequently, the directed verdicts were properly entered in the present case.

Affirmed. Costs to plaintiffs and third-party defendants.