**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0608n.06

**No. 11-1908**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

KELI MURILLO,

    Plaintiff-Appellant,

v.

WASHINGTON MUTUAL BANK, F.A., their
Successor and Assigns, including but not limited to, JP
Morgan Chase Bank, National Association, doing
business as Washington Mutual,

    Defendant-Appellee.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

</td></tr>
</table>

**FILED**

*Jun 12, 2012*

LEONARD GREEN, Clerk

BEFORE:  MOORE, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Keli Murillo filed suit against defendant Washington Mutual Bank, F.A. ("Washington Mutual" or "defendant") alleging state-law claims for breach of contract and negligence.  Murillo appeals the district court's grant of judgment on the pleadings.  Upon review, we affirm in part, reverse in part, and remand.

I.

The facts alleged in Murillo's complaint, as summarized by the district court, are as follows:

Murillo is "in the business of investing in real property."  On November 30, 2007, Murillo executed a promissory note ("the November 30 loan") with [Washington Mutual] in the amount of $87,750.00, secured by a mortgage on a property in Farmington Hills, Michigan.  This was Murillo's third investment property secured by a [Washington Mutual] mortgage.  She owned other properties in Garden City and

Detroit. The first monthly payment for the new loan, in the amount of $613.56, was due on January 1, 2008.

Murillo concedes that she missed her very first payment on the November 30 loan. According to the complaint, she claims that her failure to pay was a result of [Washington Mutual]'s incompetence. Murillo resides in Pinckney, Michigan, where residential mail-delivery does not take place. Instead, she has to pick up all her mail from a P.O. Box in Lakeland, Michigan. [Washington Mutual] erroneously mailed payment statements and the signed closing package to Murillo's home address, and she therefore failed to receive them.

She did not attempt to make her first payment on the November 30 loan until March 11, 2008, when she sent a check in the amount of $1,392.40 to [Washington Mutual]. Murillo attempted to stay current on all three of her loans by submitting one check to [Washington Mutual] that listed the tracking numbers of the loans on the check in the bottom lefthand corner. The individual at [Washington Mutual] responsible for check processing could not understand from the check how Murillo wanted the funds disbursed, and credited the payment to only one of Murillo's three loans, considering it a payment of both interest and principal. But even if the entire sum had been applied to the November 30 loan, the check would not have been sufficient to bring it current. By the time she mailed the check, Murillo owed three monthly payments to [Washington Mutual], totaling $1,840.68, not including late fees and penalties.

[Washington Mutual] began sending notices to collection agencies about the default on the November 30 loan in April of 2008. Murillo's loan payments in April and May of 2008 were returned to her. Washington Mutual acknowledged the mistake [with Murillo's first payment check] and corrected the allocation of payments in July of 2008, but Murillo haggled with them for the next six months over the assessment of added interest, late fees, and costs due to her late payments.

In January of 2009, Murillo entered a trial forbearance agreement with Chase (which, at this point, had succeeded Washington Mutual as the holder of the note) to prevent foreclosure. The parties never entered a formal forbearance agreement, and the temporary forbearance expired in April of 2009. Finally, in November of 2009, Chase initiated foreclosure proceedings, with a Sheriff's sale taking place on February 9, 2010. Murillo was not sent formal notice that she failed to qualify for a permanent modification until after the completion of the foreclosure sale.

*Murillo v. Wash. Mut. Bank, F.A.*, No. 10-cv-13100, slip op. at 3-4 (E.D. Mich. June 28, 2011) (citations omitted).

On the basis of diversity jurisdiction, Murillo filed the present action on August 5, 2010, alleging state-law claims for breach of contract and negligence. Thereafter, defendant moved for judgment on the pleadings, which was granted. This timely appeal followed.

## II.

We review a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c) using the same de novo standard of review applicable to orders of dismissal under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (internal quotation marks and citation omitted). Documents outside of the pleadings may be considered to the extent they are "incorporated by reference into the complaint." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III.

On appeal, Murillo does not address the dismissal of her negligence claim. Accordingly, any such argument is waived. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006) (holding that issues not raised in appellant's brief are waived on appeal).

IV.

This leaves Murillo's breach of contract claim.[1]  "In interpreting a contract, our obligation

is to determine the intent of the contracting parties." *Quality Prods. & Concepts Co. v. Nagel*

*Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003).  The construction of clear and unambiguous

language is a question of law for the court.  *Id*.  Unambiguous language shall be enforced unless

contrary to public policy.  *Id.*

Murillo alleges that Washington Mutual breached the mortgage and note by:  (1) failing to

apply her payments to the correct loans; (2) preventing her from making timely mortgage payments;

and (3) failing to send her closing package and other documents to the correct address.  We address

each argument in turn.

First, Washington Mutual did not breach any contractual provision in its processing of

Murillo's late loan payments.  With regard to payment processing, the mortgage provides in relevant

part:

> Lender may return any payment or partial payment if the payment or partial payments
> are insufficient to bring the Loan current.  Lender may accept any payment or partial
> payment insufficient to bring the Loan current, without waiver of any rights
> hereunder or prejudice to its rights to refuse such payment or partial payments in the
> future, but Lender is not obligated to apply such payments at the time such payments

---

[1]The mortgage and note are "governed by federal law and the law of the jurisdiction in which the Property is located."  The property at issue is located in Michigan and the parties do not dispute that Michigan law applies.  While Murillo refers to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*, in her briefs on appeal, no RESPA claim is asserted in the complaint.  Indeed, while Murillo does claim that she failed to receive required information regarding her loan, it appears she did not make a "qualified written request" for information as required under RESPA.  12 U.S.C. § 2605(e)(1).

are accepted.

Accordingly, because none of Murillo's payments were sufficient to bring her loan current, Washington Mutual retained the discretion to apply the payments, hold the payments, or return them just as it did. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005) ("A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*.").

Murillo asserts that her first two payments, if combined, were enough to bring her loan current. This argument fails. First, because Murillo failed to make this argument before the district court, it is forfeited on appeal. *United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006) ("[T]his court generally will not consider an argument not raised in the district court and presented for the first time on appeal."). Second, the pleadings and the documents incorporated therein clearly demonstrate that Murillo instructed the March 11 check to be disbursed amongst *all three* of her Washington Mutual loans. Murillo admits this fact. Accordingly, Washington Mutual did not breach the mortgage and note in applying Murillo's loan payments.

Next, Murillo asserts that Washington Mutual breached the mortgage and note by preventing her from making payments. Specifically, Murillo asserts that she was unable to make timely payments because she never received payment statements or a copy of the closing documents. A "negative duty is imposed upon a promisor not to prevent performance of any condition qualifying its promise, and a contract is breached when one party's performance is hindered or rendered impossible by the other." 23 Williston on Contracts § 63:26 (4th ed. 2011); *see also Kiff*

*Contractors, Inc. v. Beeman*, 159 N.W.2d 144, 146 (Mich. Ct. App. 1968) ("The general rule is that a party to a contract cannot prevent, or render impossible, performance by the other party and still recover damages for nonperformance.").

Murillo asserts that she contacted Washington Mutual on several occasions to obtain her closing package, but was unsuccessful. Nevertheless, she admits that she was able to obtain the information she needed to make payments from the title company. Moreover, Murillo had two other loans with Washington Mutual, and thus had actual knowledge of where to send payments. Indeed, it is undisputed that the payments on all three loans were to be sent to the same address. Finally, Murillo signed the mortgage and note, acknowledging her responsibility to make periodic payments at certain times to a certain address. *Watts v. Polaczyk*, 619 N.W.2d 714, 717 (Mich. Ct. App. 2000) ("Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents."); *Stopczynski v. Ford Motor Co.*, 503 N.W.2d 912, 913 (Mich. Ct. App. 1993) (per curiam) ("[O]ne who signs a contract cannot seek to avoid it on the [basis] that he did not read it or that he supposed that it was different in its terms."). Accordingly, Washington Mutual did not prevent Murillo from making timely payments.

Finally, Murillo asserts that Washington Mutual breached the mortgage contract by failing to provide her with the closing documents. Such a failure would amount to breach. The mortgage provides that "Borrower shall be given one copy of the Note and of this Security Instrument." Accordingly, if Washington Mutual failed to provide Murillo with such documents, Washington

Mutual breached this express and unambiguous requirement of the mortgage contract.[2]

In addition, Murillo asserts that she did not receive other notices as required under the mortgage. With regard to notice, the mortgage provides:

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.

As a result of insufficient notice, Murillo asserts that she was not informed of the method in which her late loan payments were being processed, and that as a result, she continued to unknowingly be in default.[3]

Whether Washington Mutual failed to provide required notices and closing documents, and the ramifications of such failure, are questions of fact to be addressed at a later stage of this litigation. *McManamom v. Redford Twp.*, 730 N.W.2d 757, 763-64 (Mich. Ct. App. 2006) ("Damages are an issue of fact, and questions of fact are, of course, generally decided by the trier of fact--in this case, the jury."); *Lansing Pavilion, L.L.C. v. Eastwood, L.L.C.*, No. 265970, 2006 WL 2271348, at *2 (Mich. Ct. App. Aug. 8, 2006) (per curiam) ("[T]he issue of causation is a question

---

[2]The mortgage did not provide a time by which the mortgage and note documents were to be provided to Murillo. Accordingly, it is presumed that such documents were to be provided within a reasonable period of time. *Kiff*, 159 N.W.2d at 146. The pleadings do not indicate when, if ever, Murillo received a copy of the mortgage and note from defendant.

[3]In making her arguments regarding notice, Murillo relies in substantial part on *Wanger v. EMC Mortgage Corp.*, 103 Cal. App. 4th 1125 (Cal. Ct. App. 2002). That case, however, involves the failure of a mortgage servicer to provide notice of a transfer as required under RESPA. *Id.* at 1133-37. As noted above, Murillo asserts no RESPA claim in her complaint.

of fact for the jury.").  Accordingly, we reverse the dismissal of Murillo's breach of contract claim based upon defendant's alleged failure to provide her with various documents.

V.

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.